RECEIVED
USDC, WESTERN DISTRICT OF LA
ROBERT H. SHEMWELL, CLERK
DATE 11-15-07

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAFAYETTE-OPELOUSAS DIVISION

| | |
|---|---|
| WILLIS LOUVIERE | CIVIL ACTION NO. 06-1374 |
| VERSUS | JUDGE MELANÇON |
| ACADIA PARISH SHERIFF'S DEPARTMENT, ET. AL. | MAGISTRATE JUDGE HILL |

## MEMORANDUM RULING

Before the Court are defendants' Motion for Summary Judgment or, Alternatively, Motion to Dismiss [Rec. Doc. 33] and plaintiff's Memorandum in Opposition thereto [Rec. Doc. 35]. For the reasons that follow, defendants' motion will be **GRANTED IN PART** and **DENIED IN PART**.

## I. BACKGROUND

Plaintiff, Willis Louviere ("Louviere" or "plaintiff"), instituted this action pursuant to 42 U.S.C. §1983 against the Acadia Parish Sheriff's Department[1] and Sheriff Wayne Melançon ("Melançon"), Warden Eby Henry ("Henry"), Assistant Warden and Medic Vince Conde ("Conde"), Sergeant Chester Simon ("Simon"), Deputy Darren Redlich ("Redlich"), Sergeant Russell Faulk ("Faulk"), Deputy Conrad Perry ("Perry"), Deputy Chris Pousson ("Deputy Pousson"), and Detective Dennis Fruge ("Fruge"), individually and in their official capacities (collectively "defendants"), alleging violations of plaintiff's rights under the

---

[1] The Acadia Parish Sheriff's Department was dismissed with prejudice on January 19, 2007 by United States District Judge Tucker Melançon [Rec. Doc. 18] pursuant to an oral motion of the plaintiff at the Rule 16 conference conducted before United States Magistrate Judge C. Michael Hill.

Fourth, Fifth, and Fourteenth Amendments of the United States Constitution. Plaintiff also maintains a cause of action under Louisiana state law.

The record reveals that, following a series of confrontations between Fruge and plaintiff, Iota Police Chief Scotty Pousson ("Chief Pousson") and Simon visited plaintiff at his home to attempt to end the animosity. When they arrived, Louviere was not home. A short time thereafter, however, he returned to his residence and immediately began berating and charging toward Simon. Simon ordered Louviere to stand down, but, when Louviere failed to comply, Simon shot him with a Taser gun. Despite being shot with the Taser, Louviere continued to charge toward Simon. Finally, Chief Pousson intervened and dissuaded Louviere from further assaulting Simon. As a result of this altercation, Louviere was arrested for disturbing the peace, simple assault, reckless operation, and resisting an officer.[2]

Before bringing Louviere to jail, Chief Pousson took Louviere to the hospital to ensure plaintiff was not injured by the shock from the Taser. Upon his release from the hospital, Louviere was taken to the Acadia Parish Sheriff's Annex (the "Annex") for booking. The events that allegedly transpired at the Annex are the basis of plaintiff's Complaint.

---

[2] In his Original Complaint [Rec. Doc. 1] as well as in his amended Complaints [Rec. Docs. 7 & 25], plaintiff alleged a cause of action based on the events that transpired at his home. However, in his Opposition to defendants' Motion for Summary Judgment [Rec. Doc. 35], plaintiff specifically states that he " . . . is not making a claim that his rights were violated by the tasering and actions of the Acadia Parish Sheriff's Deputies at his residence." [Rec. Doc. 35], pg. 21. Accordingly, any claim made in the complaint or amended complaints arising from the actions occurring at the plaintiff's residence is considered **ABANDONED** and will be **DISMISSED**.

In his Memorandum in Opposition to Summary Judgment [Rec. Doc. 35], Louviere avers that, once he arrived at the Annex, he overheard several officers conspiring to physically abuse him while in custody. He further alleges that Deputy Lonis Domingue warned him not to say anything no matter what was said to him. During the booking, Louviere maintains that he was verbally assaulted and physically attacked with no justification whatsoever, and that, following his booking, he was placed in an isolation cell and denied access to a phone and medical treatment.

Conversely, in their Memorandum in Support of Summary Judgment [Rec. Doc. 33-1], defendants claim that, during the booking process, Louviere lunged towards Simon in an aggressive and threatening manner. As a result, the officers subdued Louviere using reasonable physical force to immobilize plaintiff and ensure the safety of all present. Following booking, defendants state that plaintiff was given access to medical care via the Acadia Parish Jail's Medic, Conde, and was treated properly in all other respects.

Plaintiff instituted this action and defendants answered alleging the defense of qualified immunity. Defendants subsequently filed this Motion for Summary Judgment asserting that plaintiff's suit must be dismissed under the United States Supreme Court's ruling in *Heck v. Humphreys*, 512 U.S. 477 (1994), or, alternatively, because the defendants are entitled to qualified immunity.

## II. SUMMARY JUDGMENT STANDARD

A motion for summary judgment shall be granted if the pleadings, depositions and affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to

3

judgment as a matter of law.  Fed. R. Civ. P. 56;  *Little v. Liquid Air Corp.*, 37 F.3d 1069 (5th Cir.

1994) (*en banc*).  Initially, the party moving for summary judgment must demonstrate the absence

of any genuine issues of material fact. When a party seeking summary judgment bears the burden

of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if

such evidence were uncontroverted at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  As

to issues which the non-moving party has the burden of proof at trial, the moving party may satisfy

this burden by demonstrating the absence of evidence supporting the non-moving party's claim. *Id.*

If the moving party fails to carry this burden, his motion must be denied. If he succeeds, however,

the burden shifts to the non-moving party to show that there is a genuine issue for trial.[3] *Id.* at

322-23.  Once the burden shifts to the respondent, he must direct the attention of the court to

evidence in the record and set forth specific facts sufficient to establish that there is a genuine issue

of material fact requiring a trial.  *Celotex Corp.*, 477 U.S. at 324; Fed.R.Civ.Pro. 56(e).  The

responding party may not rest on mere allegations or denials of the adverse party's pleadings as a

means of establishing a genuine issue worthy of trial, but must demonstrate by affidavit or other

admissible evidence that there are genuine issues of material fact or law. *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 248-49 (1986);  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159 (1970); *Little,*

37 F.3d at 1075. There must be sufficient evidence favoring the non-moving party to support a

verdict for that party. *Anderson*, 477 U.S. at 249; *Wood v. Houston Belt & Terminal Ry.*, 958 F.2d

---

[3] Where the nonmoving party has the burden of proof at trial, the moving party does not have to produce evidence which would negate the existence of material facts. It meets its burden by simply pointing out the absence of evidence supporting the non-moving party's case. *Celotex Corp.*, 477 U.S. at 325.  To oppose the summary judgment motion successfully, the non-moving party must then be able to establish elements essential to its case on which it will bear the burden of proof at trial. A complete failure of proof by the nonmoving party of these essential elements renders all other facts immaterial. *Id.* at 322.

95, 97 (5th Cir. 1992). There is no genuine issue of material fact if, viewing the evidence in the light

most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving

party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

If no issue of fact is presented and if the mover is entitled to judgment as a matter of law,

the court is required to render the judgment prayed for. Fed. R. Civ. P. 56(c); *Celotex Corp.*, 477

U.S. at 322. Before it can find that there are no genuine issues of material fact, however, the court

must be satisfied that no reasonable trier of fact could have found for the non-moving party. *Id.*

### III. LAW & ANALYSIS

#### A. *Applicability of Heck v. Humphreys*

The United States Supreme Court has held that a plaintiff who has been convicted of

a crime cannot recover damages for an alleged violation of his constitutional rights if the

alleged violation arose from the same operative facts as the charge for which he was

convicted unless he proves, " . . . that his conviction or sentence has been reversed on direct

appeal, expunged by executive order, declared invalid by a state tribunal authorized to make

such determination, or called into question by a federal court's issuance of a writ of habeas

corpus." *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994).  In considering this rule, the

United States Fifth Circuit Court of Appeal has noted that "*Heck* requires the district court

to consider 'whether a judgment in favor of the plaintiff would necessarily imply the

invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless

the plaintiff can demonstrate that the conviction or sentence has already been invalidated.'"

*Jackson v. Vannoy*, 49 F.3d 175, 177 (5th Cir. 1995).  This requirement has been described

as the "favorable termination rule." *Sappington v. Bartee*, 195 F.3d 234, 235 (5th Cir. 1999).

Louiviere entered a plea of "no contest" to the charges of simple assault, resisting an officer, reckless operation, and disturbing the peace. In Louisiana, a plea of no contest constitutes a conviction of the crime charged. *See* La. Code Crim. Proc. Art. 552(4). Accordingly, in determining the applicability of *Heck*, the Court must consider whether a judgment in favor of plaintiff in this civil action would necessarily invalidate Louiviere's prior state court conviction. In other words, the appropriate question is whether it is possible for Louiviere to be guilty of the crimes charged and for the officers' use of force to have been objectively unreasonable.

There is no doubt that Louiviere's plea to reckless operation and disturbing the peace would not be invalidated by a judgment in his favor for excessive force.[4] However, the pleas to simple assault and resisting an officer bear greater analysis.

In Louisiana, simple assault is "... an assault committed without a dangerous weapon." La. Rev. Stat. §14:38. "Assault" is defined as "... an attempt to commit battery, or the intentional placing of another in reasonable apprehension of receiving a battery." La. Rev. Stat. §14:36. Self-defense is a justification for simple assault. La. Rev. Stat. §14:19. In the Fifth Circuit, a claim of excessive force must fail under *Heck* when self-defense is a defense to the crime for which plaintiff was convicted. *Hudson v. Hughes*, 98 F.3d 868, 873 (5th Cir.

---

[4]     For the elements of these offenses, see La. Rev. Stat. §14:99 (Reckless Operation) and §14:103 (Disturbing the Peace).

1996).[5] Assuming, *arguendo*, that the plaintiff had not abandoned his cause of action for the events that occurred at his residence, *Heck* would have barred those claims.

Similarly, *Heck* would also preclude plaintiff from seeking relief under §1983 for the events at his residence due to his conviction for resisting an officer. Louisiana Revised Statute §14:108 defines "resisting an officer" as "... the intentional interference with, opposition or resistence to, or obstruction of an individual acting in his official capacity and authorized by law to make a lawful arrest, lawful detention, or seizure of property or to serve any lawful process or court order when the offender knows or has reason to know that person arresting, detaining, seizing property, or serving process is acting in his official capacity." La. Rev. Stat. §14:108. In effecting an arrest, an officer may use reasonable force sufficient to ". . . overcome any resistence or threatened resistance of the person being arrested or detained." La. Code Crim. Pro. Arts. 201 & 220. The Fifth Circuit has used this language to find that a §1983 suit for excessive force would serve as a facial challenge to a plaintiff's conviction for resisting an officer. *Arnold v. Town of Slaughter*, 100 Fed.Appx. 321, 325 (5th Cir. 2004).[6] As in *Arnold*, were the Court to award Louviere damages based on the incident

[5]     Specifically, the Fifth Circuit stated, "[b]ecause self-defense is a justification defense to the crime of battery of an officer, Hudson's claim that [the defendants] used excessive force while apprehending him, if proved, necessarily would imply the invalidity of his arrest and conviction for battery of an officer. This is true because the question [of] whether the police applied reasonable force in arresting him depends in part on the degree of his resistance, which in turn will place in issue whether his resistance (the basis of his conviction for assaulting a police officer) was justified, which, if it were, necessarily undermines that conviction." *Hudson*, 98 F.3d at 873.

[6]     In *Arnold*, the state court made specific factual determinations in finding Arnold guilty of resisting an officer. *Arnold*, 100 Fed.Appx. at 324. Because the plaintiff's subsequent §1983 action, in essence, challenged those factual findings, the court refused to entertain plaintiff's petition under *Heck. Id.* In this case, no factual findings were made by the state court. However, Louviere admits that, prior to his arrest, he "charged" Simon and refused to submit to his authority. As these

which occurred at his residence, his conviction would necessarily be called into question since, in order to prevail, he would have to refute the factual underpinnings of his conviction and establish that his criminal conviction lacks any basis.

In *Arnold*, the Fifth Circuit noted that Arnold's claims were ". . . not that the police used excessive force after he stopped resisting arrest or even that the officers used excessive and unreasonable force to stop his resistence." *Arnold*, 100 Fed.Appx. at 324. In contrast, Louviere does claim that the officers used excessive force after the resistance stopped.[7] Plaintiff alleges that Simon, Redlich, Faulk, Perry, and Deputy Pousson attacked him at the Annex with no justification whatsoever and that it is this episode, and the events occurring thereafter, that serves as the basis for his complaint. Plaintiff also maintains that Conde failed to provide adequate medical attention and treatment while plaintiff was incarcerated. On the other hand, during their depositions, Simon, Redlich, Faulk, Perry, and Deputy Pousson all testified that Louviere lunged at Simon during the booking process prompting the officers to subdue him and that he was treated appropriately while being held. *See Deposition of Simon, Plaintiff's Opposition to Summary Judgement* [Rec. Doc. 35]*, Exhibit C*, pg. 95-96; *Deposition of Redlich, Plaintiff's Opposition to Summary Judgement* [Rec.

---

actions are the underlying basis of Louviere's conviction, the Court finds *Arnold* analogous and applies its reasoning accordingly.

[7] Plaintiff alleges in his Opposition to Motion for Summary Judgment [Rec. Doc. 35] that the record of the state court proceeding reflects that Louviere was only charged with and convicted of the incidents occurring at his residence. However, there is no actual evidence currently in the record to support this assertion. Nonetheless, giving every inference to the non-moving party, the Court accepts plaintiff's contention as true solely for the purposes of this memorandum ruling.

8

Doc. 35], *Exhibit F*, pg. 74; *Deposition of Faulk, Plaintiff's Opposition to Summary Judgement* [Rec. Doc. 35], *Exhibit J*, pg. 23; *Deposition of Chris Pousson, Plaintiff's Opposition to Summary Judgement* [Rec. Doc. 35], *Exhibit E*, pg. 30; *Deposition of Perry, Plaintiff's Opposition to Summary Judgement* [Rec. Doc. 35], *Exhibit K*, pg. 23.

Based on the record, the Court cannot say, as a matter of law, that insufficient evidence exists for a jury to find in plaintiff's favor. Taking the evidence in the light most favorable to plaintiff, if Louviere was subjected to an unprovoked attack at the Annex, *Heck* would not bar his suit. As such, summary judgement on this issue is not appropriate.

### B. Qualified Immunity

When applicable, qualified immunity protects public officials from both recovery of damages *and trial. Roberts v. City of Shreveport*, 397 F.3d 287, 291 (5th Cir. 2005). When the defense of qualified immunity is raised, the burden is on the plaintiff to "identify defendants who were either personally involved in the constitutional violation or whose act are causally connected to the constitutional violation alleged." *Woods v. Edwards*, 51 F.3d 577, 583 (5th Cir. 1995) (*citing Lozano v. Simth*, 718 F.2d 756, 768 (5th Cir. 1983)). The Supreme Court has stated that "government officials [ . . . ] generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity, then, involves a two-step analysis: First, taking the facts most favorable to the plaintiff, do the facts show that the

9

defendants violated a constitutional right?  Second, is the right clearly established; would it be clear to a reasonable officer that the conduct was unlawful in the situation that he or she confronted?  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

Qualified immunity is not lost when an officer violates a general constitutional right. Rather, the relevant inquiry is whether a reasonable officer would have known that the *specific conduct* was impermissible. *Anderson v. Creighton,* 483 U.S. 635 (1987) (holding that a "law enforcement officer who participates in an illegal search that violates the Fourth Amendment may [not] be held personally liable for money damages if a reasonable officer could have believed that the search comported with the Fourth Amendment").  A plaintiff can overcome qualified immunity by showing that the reasonable officer, under the circumstances, had "fair warning" that his actions were impermissible. *Hope v. Pelzer*, 536 U.S. 730, 741 (2002).

As previously discussed, a significant factual dispute exists as to what transpired at the Annex after plaintiff's initial arrest.  If the defendants' version of events is true, qualified immunity exists as the officers' response to Louviere's actions were reasonable given his history of threats against other officers and the possibility of harm to Simon.  If their actions were reasonable, then no clearly established statutory or constitutional right was violated as the force was not excessive.  However, if plaintiff's version of events is true, qualified immunity does not apply as Louviere would have had a clearly established right to be free from excessive or unreasonable force while in custody and a reasonable officer would, in

fact, be expected to know this. *See Hudson v. McMillian*, 503 U.S. 1 (1992). Based on the record before the Court, the Court cannot say that a reasonable jury could not find plaintiff's version to be true. In addition to plaintiff's own testimony, other evidence exists to support his position. Accordingly, the Court cannot grant summary judgement on this issue.

### C. Claims against Fruge, Melançon, and Henry

Plaintiff makes claims against several defendants yet does not specifically annunciate what part they played in the alleged beating. When the defense of qualified immunity is raised, the burden is on the plaintiff to "identify defendants who were either personally involved in the constitutional violation or whose act are causally connected to the constitutional violation alleged." *Woods*, 51 F.3d at 583 (*citing Lozano*, 718 F.2d at 768). Plaintiff has failed in his burden as to several named defendants. In particular, it is uncontested that Fruge was not involved in the confrontation at the Annex nor did Fruge have any control over or contribute to the conditions of Louviere's confinement. Accordingly, Fruge will be dismissed.

Similarly, Louviere makes no specific allegations of misconduct against Melançon or Henry. While he does allege that a history of abuse in the Acadia Parish Jail, there is absolutely no evidence in the record to support this theory. As the burden is on the plaintiff, Henry must be dismissed. Louviere also states that Melançon is liable due to inadequate training of employees and under a general theory of *respondeat superior*. Again, Louviere points to no evidence in the record, other than his own unsubstantiated assertion, to support

the contention of inadequate training or supervision of employees. As plaintiff may not rest on mere allegations to avoid summary judgment, this claim must be dismissed. *Anderson*, 477 U.S. at 248-49; *Adickes*, 398 U.S. at 159; *Little*, 37 F.3d at 1075. Further, the law does not recognize a *respondeat superior* claim under §1983. *Thompson v. Upshur County*, 245 F.3d 447, 459 (5th Cir.2001). Accordingly, this claim too must fail and Melançon will be dismissed.

## IV.  CONCLUSION

For the reasons stated, the defendants' Motion for Summary Judgment [Rec. Doc. 33] will be **GRANTED** as to Deputy Dennis Fruge, Warden Eby Henry, and Sheriff Wayne Melançon and all claims against those defendants will be **DISMISSED WITH PREJUDICE**. Further, all of plaintiff's claims against all defendants arising from his initial arrest at his residence are deemed **ABANDONED** and will be **DISMISSED WITH PREJUDICE**. However, defendants' Motion [Rec. Doc. 35] will be **DENIED** as to all other defendants in all other respects on all other claims.